UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL J. HILL,

               Petitioner,             **REPORT AND RECOMMENDATION**

    vs.                            **No. 04-CV-6601(CJS)(VEB)**

CALVIN E. WEST, Superintendent
of Elmira Correctional Facility,

               Respondent.
_____

## I.    INTRODUCTION

Michael J. Hill ("Hill" or "Petitioner") has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his March 7, 1990, judgment of conviction following a guilty plea to one count of first-degree manslaughter. He is presently incarcerated pursuant to that judgment of conviction. Hill principally contends that his guilty plea was not voluntary, knowing and intelligent, and that it was produced by coercion and misrepresentations by trial counsel, the prosecutor, and the trial court.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(c)(1) for the issuance of a report and recommendation regarding the disposition of Hill's petition. Following careful consideration of all of the pleadings submitted by Hill in support of his claims, and respondent's arguments in opposition thereto, I recommend that Hill's request for a writ of habeas corpus be denied and that the petition be dismissed in its entirety .

## II.    BACKGROUND

Hill was arrested in the City of Niagara Falls on August 26, 1989, on charges of first degree assault and criminal use of a firearm based on his alleged involvement in the August 25,

1989 shooting of Shawn Thompson ("Thompson" or "the victim") in front of the Holloway Bar. He was indicted along with his cousin, Sean Person ("Person"), who was alleged to be the actual shooter. When Thompson subsequently died on September 2, 1989, as a result of the wounds inflicted during the shooting, the indictment charging Hill and his cousin with assault was dismissed, and a new indictment charging second degree murder (a class A felony) was handed down by the grand jury on October 25, 1989.

Prior to trial, Hill, on the advice of his assigned counsel, accepted a plea bargain allowing him to plead guilty to the reduced charge of first degree manslaughter (a class B felony) in full satisfaction of the indictment. Hill's plea was taken by Judge Hannigan in Niagara County Court of New York State Supreme Court on February 8, 1990. Hill was sentenced on March 7, 1990, to an indeterminate term of 8⅓ to 25 years in state prison.

A timely notice of appeal was filed, and new appellate counsel was assigned to perfect Hill's appeal. Appellate counsel raised one issue–namely, that Hill's "plea to manslaughter in the first degree was insufficient and defective" because "at no point in the entire allocution did [Hill] admit to anything approximating the requisite 'intent to cause serious physical injury to another person . . .'" Petitioner's Appellate Brief ("Pet'r App. Br.") at 5 (quoting N.Y. PENAL LAW § 125.20(1)). According to appellate counsel, the trial court tried to "inveigle" Hill into accepting the court's version of events, while Hill's "concept of guilt . . . was that his guilt consisted [solely] of 'being there'" at the scene of the crime. Pet'r App. Br. at 6.

The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed Hill's conviction in the following memorandum decision and order:

> The [trial] court properly accepted defendant's plea to first degree manslaughter. The court's inquiry was sufficient and provided a factual basis for the plea. Defendant admitted that he knew his cousin, a codefendant, intended to kill the victim, that he provided him with the shotgun and that he was present when the shooting occurred. These facts establish that defendant shared a community of purpose with his cousin.

*People v. Hill,* 171 A.D.2d 1065, 1066, 569 N.Y.S.2d 42, 42 (App. Div. 4th Dept. 1991) (citations omitted). Hill did not seek leave to appeal to the New York Court of Appeals or petition for a writ of *certiorari* to the United States Supreme Court.

Hill subsequently filed three motions for *vacatur* pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 in Niagara County Court (the trial court). The thrust of each C.P.L. § 440.10 application was that Hill's plea was coerced, that his trial attorney had told him that "since it was his first felony he wouldn't receive the maximum sentence for a B felony, and would more likely get a 3 to 9[-year sentence]", and that the plea allocution was insufficient because Hill never admitted to having participated in the killing. Resp't Mem. (citing Petitioner's Supporting Affidavit, received by County Court on October 5, 2004, ¶2).

County Court Judge Hannigan, who took petitioner's guilty plea, decided the first C.P.L. § 440.10 motion, filed on September 24, 1991. Hill's second C.P.L. § 440.10 motion was filed on August 23, 2004, and denied on August 27, 2004. The third was filed on October 5, 2004, and denied on November 16, 2004. In the orders denying relief, the County Court judges characterized Hill's motions as repetitive and baseless.

Hill commenced the instant habeas proceeding on or about December 6, 2004. His grounds for relief are contained on a handwritten attachment to the form habeas petition (Docket No. 1) and are as follows: (1) the guilty plea was involuntary, the plea was the result of threats against petitioner and his family; and trial counsel misrepresented the length of the possible

sentence Hill would receive; (2) the conviction was obtained by means of a "coerced

confession"; (3) the prosecution failed to disclose evidence favorable to the defense; (4) failure

to allow Hill to testify before the grand jury; (5) there was a conflict of interest because the judge

who denied one of his C.P.L. § 440.10 motions had been the district attorney at the time of Hill's

guilty plea; (6) the plea was induced by intimidation, threats, and retaliation; and (7) trial counsel

was ineffective for failing to make a reasonable investigation, colluding with the prosecutor to

withhold favorable evidence, misrepresenting Hill's sentence exposure, failing to call character

and psychiatric witnesses, and failing to request a pre-sentencing report. *See* Petition and

Attachments (Docket No. 1); *see also*

In opposition to the petition, respondent raises the defense of non-exhaustion with regard

to Hill's claim concerning the insufficiency of the plea allocution. Respondent notes that under

28 U.S.C. § 2254(b)(2), district courts are authorized to deny, on the merits, a habeas petition

containing unexhausted claims. Respondent concedes that Hill's remaining claims have been

exhausted. Respondent contends that, in any event, none of Hill's allegations warrant the

issuance of habeas relief.

## III.    LIMITATIONS ON HABEAS RELIEF

The Anti-terrorism and Effective Death Penalty Act ("AEDPA") amended 28

U.S.C. § 2254(d) to provide that

(d) An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Habeas relief is only available to redress errors in a state court

criminal proceeding that are of a federal constitutional magnitude. *See* 28 U.S.C. §

2254(a).

## IV.    DISCUSSION

### A.    Petitioner's guilty plea was knowing, voluntary, and intelligent, and was not the product of threats or coercion.

Grounds one, two and six all relate to the voluntariness of Hill's guilty plea, and allege

coercion and misrepresentations by both the trial judge and trial counsel, and threats by unnamed

individuals against him and his family. *See* Attachment to Petition, ¶¶1, 2, & 6 (Docket No. 1).

When reviewing the propriety of a guilty plea, the court must consider the "totality of the

circumstances surrounding" the entry of a plea. *See Brady v. United States*, 397 U.S. 742, 757

(1970). In *Oyague v. Artuz*, 393 F.3d 99 (2d Cir.2004), the Second Circuit noted that "the

question of whether a plea of guilty has been entered voluntarily within the meaning of the

Constitution is often a complex one that involves mixed questions of law and fact[.]" *Oyague*,

393 F.3d at 104. When engaged in habeas review, federal courts are to accept factual

determinations made by the state courts unless they are not supported by the record. *Id.* Because

the ultimate issue of whether a plea represents an effective waiver of federal constitutional rights

is controlled by federal law, federal habeas courts are not bound by the legal conclusions reached

by the state courts as to whether a plea was voluntarily made by a defendant. *Id.*

With regard Hill's claim of coercion and misrepresentations in connection with his

decision to plead guilty, Judge Hannigan, in denying Hill's first C.P.L. § 440.10 motion, stated

as follows:

> As I recall the event, he was quite proud of the fact that he, and his bodyguard
> [co-defendant Person], and [sic] wasted a drug supplier [Thompson] who had sold
> him "bad goods". He demanded his money be returned. When his perfectly
> reasonable request was refused; he had "his man" waste the supplier. The way he
> spoke at his plea, I thought he was proud of what he had accomplished. Now, he
> says he was coerced. I told him, in open court, on the record the maximum term
> which he could get; which he did get. He now says his attorney told him he would
> get 3 to 9. The allegations, which are the basis of this motion, are outright lies.
> [The motion] has no validity. It is denied.

Resp't Mem. at 10 (Docket No. 10) (quoting Niagara County Court Decision & Order dated

November 15, 1991, Denying Petitioner's C.P.L. § 440.10 Motion).

    The Court has reviewed the transcript of Hill's guilty plea in its entirety, and Judge

Hannigan's observations and findings are amply supported by the record. Because a review of

the totality of the circumstances dispels any concern about the constitutionality of the plea

process in this case, the plea allocution it is reproduced in relevant part below.

| | |
|---|---|
| The Prosecutor: | My understanding from talking to [defense counsel], [is that Hill is] prepared to enter that plea [to first degree manslaughter][1] this afternoon. |
| Trial Counsel: | That's correct, your Honor. |
| The Court: | Are you satisfied with the attorney assigned to represent you? |
| The Defendant: | Yes, I am. |
| The Court: | Do you have any complaints about the attorney assigned to represent you? |
| The Defendant: | No, I don't. |
| The Court: | Do you understand that if you plead guilty to manslaughter in the first degree you can be sentenced to a state prison for a minimum of eight and a third and a maximum of 25 years? |
| The Defendant: | Yes. |

---

[1]       The prosecutor is referring to the fact that Hill's cousin, Shawn Person, had entered a guilty plea
earlier that day to the same charge.

. . .

| | |
|---|---|
| The Court: | Anybody promise you anything in return for a plea of guilty? |
| The Defendant: | No. |
| The Court: | Anybody threaten you in any way to induce you to plead guilty? |
| The Defendant: | No, they haven't. |
| The Court: | Did you participate in the murder of this man? |
| The Defendant: | Yes, I did. |
| The Court: | How did you do that? |
| The Defendant: | Being there when the crime took place. |
| The Court: | That's not participating. |
| The Defendant: | But I possessed the weapon before it was used in the crime. |
| The Court: | What is it, your cousin [who was the shooter]? |
| The Defendant: | Yes. |
| The Court: | He says that, tell me this, if this is true. He said you sold crack to this guy and he owed you $450.00[;] a little slow on paying, is that true? |
| The Defendant | No, it isn't. |

P.1-4.[2] The trial judge and Hill then engaged in a discussion, with Hill disputing statements that apparently came from his co-defendant's guilty plea to the same charge, which had been entered earlier that day. In particular, Hill rejected the notion that the shooting occurred as a result of a drug debt and contended that the weapon was a pump shotgun, not a sawed-off shotgun. However, Hill affirmed that it was his gun, and he showed it to his cousin a short time before the shooting. P.5. He met his cousin down at the Holloway Bar; Hill had already given his cousin the gun. P.6.

Hill stated that he was not looking for Thompson, the victim. The judge informed Hill that his cousin had said he "killed [Thompson] because the [guy] owed [Hill] money and he wasn't going to pay [Hill] and [Hill] asked him for the money and he said ['no, I'm not going to

---

[2]     Citations to "P.___" refer to the transcript of the plea hearing.

give it to you.[']"

| | |
|---|---|
| The Defendant: | He killed him for me, this is true, but he didn't kill the guy because he owed me money. He killed the kid because the kid, he was threatening my life. He was telling me if I wasn't going to work for him or something like that. I wasn't going to work for no black at all. Hit me with a car once. I got hit by a car by them once because I wouldn't sell drugs for him. |
| The Court: | Selling drugs for him? |
| The Defendant: | Because I wasn't. |
| The Court: | The guy that got killed? |
| The Defendant: | Yeah. |
| The Court: | Your cousin says he owed you $450.00 for you supplying him drugs? |
| The Defendant: | No, the kid didn't owe me the money. He wanted me to sell for him, wanted to give me stuff and I wouldn't take it. He said if I wouldn't take it, I wouldn't work on that block period. |
| The Court: | Tell me, I've been told you want to pled [sic] guilty to manslaughter in the first degree. Tell me how you committed manslaughter in the first degree. |
| The Defendant: | I did it. I knew Shawn was going to do it. Shawn told me he was going to put a bullet in his head and he did it and I was there. |
| The Court: | You knew he was going to kill him? |
| The Defendant: | That's right. |
| The Court: | Knowing that you gave him the weapon to do it with? |
| The Defendant: | I didn't think he was going to through with it but he did. |
| The Court: | Why did you give him the weapon if you didn't think he was going to do it? |
| The Defendant: | Just to see if he was going to be a man of his word. |
| The Court: | Because he said he was going to kill him? Thompson? That his name, Thompson? |
| The Defendant: | Yes, yes. |
| The Court: | He said he was going to kill him? |
| The Defendant: | Yes, he did. |
| The Court: | And the only thing, the only dealings that Thompson had with your cousin was through you? |
| The Defendant: | That's right. |
| The Court: | And you say that Thompson was the drug dealer and wanted you to sell for him and your cousin telling, you, that you're the drug dealer and Thompson sold for you and owed you $450.00, the only connection between you and |

|  |  |
|---|---|
|  | Thompson is dealing crack, right? |
| The Defendant: | That's right. |
| The Court: | Your cousin doesn't deal crack, is that right? |
| The Defendant: | No, he's like my bodyguard. |
| The Court: | He's your bodyguard? |
| The Defendant: | That's right. |
| The Court: | That's why you give him the gun? |
| The Defendant: | Yes. |
| . . . | |
| The Court: | Did you tell him he was your bodyguard? |
| The Defendant: | It was established before I got out of jail the first time, that was established. |
| . . . | |

P.7-10. When questioned as to why Hill would have his cousin, who was physically smaller, as his bodyguard, said, "Because he was ruthless, that's why." P.10. The trial judge then asked, in reference to his cousin, "He's a little bit slow, isn't he?" *Id*. Hill responded, "No, he ain't slow." The court said, "You mean he's mean?" and Hill replied, "Yeah." Hill explained that he was "getting all the money" and his cousin was "[g]oing to collect from Thompson." The judge asked if his cousin was going to collect $450.00 from Thompson, and Hill replied, "Yes, he was." P.11.

Hill then confirmed that by pleading guilty, he was waiving his right to have a jury trial, to confront witnesses and cross-examine them. He understood that he was agreeing to being convicted based on his own admission of guilt. P.11-12. He then entered his guilty plea:

|  |  |
|---|---|
| The Court: | How to you plead to manslaughter in the -- |
| The Defendant: | Guilty. |
| Trial Counsel: | – first degree. |

P.12.

As the above-quoted excerpts demonstrate, Hill's testimony was meandering and at times contradictory during the colloquy. However, his argument that the plea allocution court did not establish the requisite criminal intent on his part is flawed because it isolates his initial statement

that he was guilty because he "was there" and does not take into account the remainder of his statements at the hearing. After being informed by the trial judge that just "being there" was an insufficient basis for him to be liable as an accessory in the murder of Thompson, Hill explained that he possessed the gun before he gave it to Person, who used it to shoot Thompson. Hill stated that he and Person had a long-standing agreement wherein Person acted as his "bodyguard" and that was why he gave Person the gun.

It is true that Hill was argumentative with the judge about the precise crux of the conflict between him and the victim. Person, during his plea colloquy, had told Judge Hannigan that Thompson owed Hill money over a crack deal. Hill initially disagreed with that notion, asserting that the reason he wanted Person to kill Thompson was because Thompson was threatening him over the fact that Hill had refused to sell crack for him. Hill, however, eventually did agree that Thompson owed him money as a result of their dealings involving crack. Hill confirmed that the connection between him and Thompson was selling crack, and that Person did not deal crack at all. The critical point here is that Hill unequivocally stated several times that he *knew* Person was going to shoot Thompson. Although Hill expressed doubt about whether Person would actually carry out his promise to "put a bullet" in Thompson's head, Hill stated that Person followed through: Person "did it" and Hill "was there." I note that Hill never made any statements indicating that he did not want Person to shoot Thompson, that anyone other than he (Hill) wanted Person to shoot Thompson, or that Person had any reason of his own to shoot Thompson.

Thus, despite Hill's at-times contradictory statements, a review of the totality of the circumstances of his allocution shows that it was a sufficiently provident plea so as to establish his guilt of first degree manslaughter under the acting in concert theory charged in the

indictment. *See* N.Y. PENAL LAW §§ 20.00 (A defendant "is criminally liable for [another's

criminal] conduct when, acting with the mental culpability required for the commission thereof,

he solicits, requests, commands, importunes, or intentionally aids such person to engage in such

conduct . . . ."); 125.20(1) ("A person is guilty of manslaughter in the first degree when . . .

[w]ith intent to cause serious physical injury to another person, he causes the death of such

person or of a third person . . . .").

As the Supreme Court explained in *Blackledge v. Allison*:

> To allow indiscriminate hearings in . . . post conviction proceedings . . . would
> eliminate the chief virtues of the plea system speed, economy, and finality. . . .
> [T]he representations of the defendant, his lawyer, and the prosecutor at such a
> [plea] hearing, as well as any findings made by the judge accepting the plea,
> constitute a formidable barrier in any subsequent collateral proceedings. Solemn
> declarations in open court carry a strong presumption of verity. The subsequent
> presentation of conclusory allegations unsupported by specifics is subject to
> summary dismissal, as are contentions that in the fact of the record are wholly
> incredible.

431 U.S. 63, 71-74 (1977). Quite simply, Hill's statements under oath during the plea colloquy

belie his claims of coercion, threats, involuntariness, fraud, manipulation, and misrepresentation.

The record fully supports the rulings by the state courts that Hill's claim was knowing,

voluntary, and intelligent. Accordingly, I recommend denying habeas relief.

**B.      Petitioner's claim regarding the factual insufficiency of the plea allocution
          does not set forth a claim of constitutional dimension and is, in any event,
          without merit.**

As a matter of New York state law, a factual inquiry is not required where, as here, a

defendant pleads guilty to a lesser crime than the offense charged in the indictment. *See People

v. Moore*, 71 N.Y.2d 1002, 530 N.Y.S.2d 94, 96 (N.Y. 1988) (although allocution did not

establish that defendant possessed "loaded firearm," an element of the crime, "since defendant

pleaded guilty to a lesser crime than the one charged in the indictment, a factual basis for the plea was unnecessary"); *People v. Flores*, 237 A.D.2d 128, 655 N.Y.S.2d 3, 4 (App. Divi. 1st Dep't 1997) (holding that "because defendant pleaded guilty to a lesser crime than the crime charged in the indictment, a factual basis for the plea was not required") (cited in *Torres v. McGrath*, 407 F. Supp.2d 551, 559 (S.D.N.Y. 2006) (although trial court did not ask defendant about specific facts of his criminal conduct, or elicit facts sufficient to support certain elements of the offense, plea allocution was factually adequate, where offense to which defendant pled guilty was a lesser crime than offense charged in the indictment). Nevertheless, Hill's factual allocution, viewed in its entirety, was sufficient to satisfy New York's requirements.

What appeared to be a matter of some dispute was the motive for the shooting–at least inasmuch as Hill felt compelled to tell, in his own words, the background regarding his beef with Thompson. Even though he initially insisted that he was guilty of manslaughter based on his "being there" at the scene, which the trial court explained was not an adequate basis, Hill went on to describe in detail his involvement in the shooting of Thompson. The trial judge questioned Hill at length, and in the end, confirmed the congruence between the version of events given by the cousin and Hill. A reading of the plea colloquy establishes that there is an insufficient basis to conclude anything other than that Hill wanted his cousin to shoot Thompson and thus had the necessary criminal intent to support his guilty plea to a charge of first degree manslaughter. *See People v. Lopez*, 71 N.Y.2d 662, 667-68 (N.Y. 1988) ("Although defendant's responses to one series of questions posed by the court indicated that he may not have [had] inten[t,] . . . [t]he plea minutes demonstrate that the trial court, when confronted with statements causing significant doubt upon defendant's guilt, properly conducted further inquiry to ensure that defendant's plea

was knowing and voluntary; [and] that he possessed the necessary criminal intent.").

Moreover, the United States Constitution does not require a factual inquiry before a court may accept a defendant's guilty plea. *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir.1984) ("[D]ue process does not mandate a factual basis inquiry by state courts . . . .") (citing, *inter alia*, *McCarthy v. United States*, 394 U.S. 459, 465 (1969)); *accord Torres v. McGrath*, 407 F. Supp.2d at 559.  As the Second Circuit explicitly noted in *Willbright*, it is Rule 11 of the Federal Rules of Criminal Procedure, "not due process, that requires federal courts to conduct a factual inquiry before accepting a guilty plea." 745 F.2d at 780; *see also Ames v. New York State Div. of Parole*, 772 F.2d 13, 15 (2d Cir.1985) ("The State court's [guilty plea] inquiry did not have to be patterned after FED. R. CRIM. P. 11.").

It is beyond dispute that habeas relief under 28 U.S.C. § 2254(a) is only available for a violation of a defendant's rights under the United States Constitution. Here, however, Hill has failed to establish that either a violation of New York state law, much less an error of federal constitutional magnitude, occurred during the trial judge's conduct of the plea allocution. Accordingly, I recommend dismissing Hill's claim on the basis that it is neither cognizable on federal habeas review nor meritorious.

### C.    Petitioner's *Brady* claim is without merit.

In *Brady v. Maryland*, the Supreme Court held that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. 83, 87 (1963). To prove a *Brady* violation, a habeas petitioner must establish that: 1) the evidence at issue was favorable to the accused, either because it was

exculpatory or it could have impeached a prosecution witness; 2) the evidence was suppressed

by the prosecution, either willfully or inadvertently; and 3) prejudice ensued from the

withholding. *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972); *see also Strickler v. Greene*, 527

U.S. 263, 281-82 (1999).[3]

On its face, Hill's *Brady* claim is meritless. However, in the interest of completeness, the

Court will discuss the three *Brady* elements. First, the Court cannot agree that Hill has

adequately explained how these witnesses would have assisted him in proving his innocence.

Thus, he has failed to establish that the information be "favorable."

Hill's allegations in support of this claim are that the "prosecutor made several off the

record deals . . ." with a Myron Johns ("Johns") and a Virgil Morgan ("Morgan"). *See*

Attachment to Petition, ¶3 (Docket No. 1). According to Hill the "deal" with Johns occurred on

September 14, 1989, in "exchange for his brother Shawn Person being able to plea to lesser

charges by provens [sic] the shooting was an accident caused by a struggle over the gun . . . ." *Id.*

Johns' name appears in a police investigative report that was turned over the defense prior to the

---

[3]         It is well established that "a guilty plea represents a break in the chain of events which has
preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact
guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the
deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Lefkowitz v. Newsome*, 420
U.S. 283, 295 (1975). Thus, some "[f]ederal district courts have held that a valid guilty plea waives any subsequent
*Brady* claim brought in a federal habeas petition." *Dunn v. Senkowski*, No. 9:03CV0364(NPM), 2007 WL 2287879,
at *13  (N.D.N.Y. Aug. 7, 2007) (citing, *inter alia, Gayle v. Lacy*, No. 95-CV-683, 1997 WL 610654, at *8
(N.D.N.Y. Oct. 1, 1997) (Pooler, D.J.) ("By entering a guilty plea and admitting to each and every factual element of
the charge, petitioner waived his right to assert that his rights had been violated by the prosecution's failure to
disclose Brady material")). The Court notes that some district courts within this Circuit have opined that an
individual's right to receive Brady material cannot be waived, notwithstanding the existence of a valid guilty plea.
*See United States v. Sapia*, No. 02 CIV 649, 2002 WL 620483, at *9 n. 4 (S.D.N.Y. Apr. 18, 2002) (emphasis
added) (citation omitted), remanded on other grounds, 108 Fed. Appx. 661 (2d Cir. Aug. 4, 2004); *Brown v.
Berbary*, No. 01-CV-6500, 2004 WL 1570258, at *4-5 (W.D.N.Y. June 16, 2004) (Payson, M.J.); *Fambo v. Smith*,
433 F. Supp. 590 (W.D.N.Y.) (*passim*) (Curtin, J.), *aff'd*, 565 F.2d 233 (2d Cir. 1977)). Because there is authority in
this Circuit standing for the proposition that a *Brady* claim is not necessarily foreclosed by a valid guilty plea, I will
alternatively consider whether Hill's *Brady* claim has substance. *Accord, e.g., Dunn.*, 2007 WL 2287879, at *13.

plea, since it is contained in the state court records submitted by respondent to the Court. The report indicates that the police had spoken with an unnamed informant and were "explaining to him that if they recovered the shotgun used in the homicide it may be beneficial to the defense of Shawn Person because of the shot pattern." Four days later, Johns, who was Person's brother, called the police and "stated that his brother had told him where the gun was at and that he [might] be able to get it back." The report continues, "Person had said the shooting was accidental and that Myron was told where the gun was at." With further assistance from Johns and Person, who was detained at that time, the police recovered the gun, a Mossberg 12-gauge shotgun without a stock. The gun was turned over to the ballistics laboratory for testing on September 14, 1989.

That Hill is claiming unfairness with regard to Johns does not make sense for a number of reasons. First, the discovery of the gun clearly did not "exonerate" Hill, as his case was presented to the jury on October 12, 1989. Second, Hill nevertheless benefitted from whatever assistance Johns was able to provide the police:  Hill was allowed to plea to the same lesser charge of first degree manslaughter as had his co-defendant, Shawn Person.

Hill next contends that Morgan was a "third party involved in the incident" and was "allowed to stay at liberty in exchange for his testimony." *Id.* Hill alleges that this "deal" with Morgan was "kept off the records" to "keep him from proving his innocence." This claim is based on pure speculation. The Court has been provided with the grand jury minutes, and no witness named Virgil Morgan testified. Hill did not have a trial, so the Court cannot discern when Morgan gave "testimony," if ever, much less how it would have been potentially exculpatory or impeaching of the prosecution's witnesses.

Second, a defendant cannot satisfy *Brady*'s suppression requirement if the defendant, directly or through counsel, "'either knew, or should have known, of the essential facts permitting him to take advantage of [that] evidence.'" *United States v. Zackson*, 6 F.3d 911, 918 (2d Cir.1993) (quoting *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir.1982)) (alteration added). If the defendant has information but fails to use due diligence to make use of it, the defendant cannot later claim that the government "suppressed" evidence. *See LeRoy*, 687 F.2d at 618. Here, it is clear that there was no "suppression" because Hill was obviously aware of the existence of these individuals (especially Person, his co-defendant). Moreover, the police report detailing the substance of their contacts with Johns was made available to the defense prior to the plea.

Third, Hill cannot fulfill the "materiality" requirement. It is well established that the suppression of *Brady* material does not amount to a constitutional violation unless "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682; *accord Boyette*, 246 F.3d at 91 The "test of materiality in the context of a plea is whether there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial." *Tate v. Wood*, 963 F.2d 20, 24 (2d Cir.1992). Nothing before the Court gives rise to even a possibility that Hill would have instead chosen to proceed to trial if the information concerning Johns, Morgan, and Person had not allegedly been withheld from him prior to the entry of his guilty plea.

A habeas petitioner must satisfy all three elements to prevail on a *Brady* claim. *E.g.*, *Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001). Since Hill has failed to establish any of the three

required elements concerning his *Brady* claim, this aspect of his request for federal habeas

intervention should be denied.

Finally, as a further allegation in support of his *Brady* claim, Hill alleges that the

"prosecutor failed to adequately serve defendant with a C.P.L. § 710.30 notice [sic] voluntary

disclosure [sic] form for the following witnesses who could have easily exonerated defendant,"

i.e., Johns, Morgan, and Person. Attachment to Petition, ¶3(C) (Docket No. 1). C.P.L. § 710.30

provides, in pertinent part, that the prosecution intends to offer "testimony regarding an

observation of the defendant either at the time or place of the commission of the offense or upon

some other occasion relevant to the case, to be given by a witness who has previously identified

him as such, they must serve upon the defendant a notice of such intention, specifying the

evidence intended to be offered." N.Y. CRIM. PROC. LAW § 710.30(1)(b). First, the issue of

C.P.L. § 710.30 notice is purely a matter of New York state law. Moreover, Hill waived any any

claim of untimely notice pursuant to C.P.L. § 710.30(1) by pleading guilty. *People v. Taylor*, 65

N.Y.2d 1, 3 (N.Y. 1985). Hill's contention of error in regard to C.P.L. § 710.30(1) accordingly

should be dismissed.

      **4.**     **Petitioner's claim that he was denied his right to testify before the grand jury is not cognizable on federal habeas review and was waived by his guilty plea.**

Hill asserts that his "conviction was obtained by the unconstitutional failure to present

defendant before a grand jury[.]" Attachment to Petition, ¶4 (Docket No. 1). "Federal courts

have consistently held that the right to appear before the grand jury is not reviewable by a federal

habeas court." *Dunn v. Sears*, No. 06 CV 4757(VM), 2008 WL 2485431, at *8-9 (S.D.N.Y. June

18, 2008) (citing *Dixon v. McGinnis*, 492 F. Supp.2d 343, 347 (S.D.N.Y. 2007) (stating that

because the law that guarantees a criminal defendant's right to testify before the grand jury is

embodied in a New York state statute, citing C.P.L. § 190.50(5)(a), and not the United States

Constitution, a petitioner's claim that he was deprived of his right to testify before the grand jury

"cannot stand as a ground for federal habeas relief"); *Moore v. Warden*, 380 F. Supp.2d 321, 328

(S.D.N.Y. 2005) (stating that "claims of deficiencies in state grand jury proceedings, where

rendered harmless by a petit jury, are not cognizable in a habeas corpus proceeding in federal

court")).

Furthermore, Hill has effectively waived this claim by pleading guilty. *Smith v. Burge*,

No. 03 Civ. 8648, 2005 WL 78583, at *8 (S.D.N.Y. Jan. 12, 2005) (stating that "if a habeas

petitioner entered a voluntary and knowing guilty plea while represented by competent counsel,

any non-jurisdictional defects, including defects with regard to grand jury proceedings, are

waived"); *Jordan v. Dufrain*, No. 98 Civ. 4166, 2003 WL 1740439, at *3 (S.D.N.Y. Apr. 2,

2003) (finding that guilty pleas render "any errors in the grand jury proceedings . . . harmless").

Accordingly, Hill's argument concerning the alleged deprivation of his state-law right to

testify before the grand jury should be dismissed as non-cognizable on federal habeas review.

### 5. There was no "conflict of interest" in regard to the denial of petitioner's motion to vacate the sentence.

As his fifth ground for habeas relief, Hill contends that his motion to vacate the sentence

was "improperly denied" because "the court allowed a conflict of interest, as the prosecutor

played the role of both judge and prosecution." Attachment to Petition, ¶5(A) (Docket No. 1).

Hill is referring to the fact that at the time of his guilty plea and sentencing, the Niagara County

District Attorney was Peter Broderick. However, Broderick did not actually prosecute Hill's

case, which was handled by an assistant district attorney. Broderick subsequently became a

judge of the Niagara County Court and heard one of Hill's motions to vacate. Contrary to Hill's

contention, this situations did not require recusal of Judge Broderick. *See United States v. Fanta*, No. 04 CR. 1253(JFK), 2005 WL 3434709, *2 (S.D.N.Y. Dec. 13, 2005) ("Former federal prosecutors often preside over trials, as Federal Judges, in districts where they have served as United States Attorney or as an Assistant United States Attorney. That has been the situation in the Southern District of New York for decades, and the suggestion that a former prosecutor would not reasonably appear to be impartial is ridiculous."); *Bell v. Coughlin*, 778 F. Supp. 164, 171 (S.D.N.Y. 1991) (holding that state trial judge's failure to recuse himself from hearing petitioners' motion to vacate was not constitutional error cognizable in habeas proceeding, despite trial judge's alleged "reputational interest" based upon his presiding over trial; there was no threshold showing that petitioners' allegations of judicial misconduct, involving pressuring prosecution witness to give false testimony and engaging in *ex parte* communication with prosecutor, had any basis), *aff'd mem.*, 17 F.3d 390 (2d Cir. 1993). Accordingly, I recommend denial of this claim as without merit.

6. **Petitioner's claims of "threats and retaliation" with regard to his decision to plead guilty are unsubstantiated.**

Hill asserts that "retaliation and threats at defendant's life and, families [sic] life induced stress and fear, and was cause in the acceptance of plea." Attachment to Petition, ¶6(A) (Docket No. 1). The only specific circumstance to which Hill cites is an alleged "bombing incident at defendant's mother [sic] house" on September 5, 1989. Even assuming for the sake of argument that this occurred, Hill has failed to demonstrate how it had any effect on his decision to plead guilty. The transcript of the plea hearing is devoid of any mention by Hill of the bombing incident or any other such acts of intimidation. Indeed, Hill expressly affirmed that he had not been threatened into pleading guilty. The present unsubstantiated assertions of coercion are

entitled to no weight in the fact of Hill's earlier sworn statements to the contrary. This claim therefore should be denied.

### 7.    Petitioner received the effective assistance of trial counsel and appellate counsel.

As his seventh ground for habeas relief, Hill assigns a number of errors to his trial counsel: (a) counsel "never made a reasonable investigation, and therefore could not make a reasonable decision on whether defendant should or should not plead guilty"; (b) counsel's "advice to plead guilty was coercive and not in good faith"; (c) counsel "withheld *Brady* and *Rosario* material to aid prosecution in obtaining a plea of guilty through fraud and coercion"; (d) counsel "misrepresented the time defendant could be sentence to" [sic]; (e) counsel "would not seek out character witnesses, or request a psychiatric examination" in connection with trial or sentencing; and (f) counsel "did not request a pre-sentencing report because he felt it would have included defendant's criminal history and thereby would have undermined his chances at the minimum sentence." Attachment to Petition, ¶7 (Docket No. 1).

The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." To establish an ineffective assistance claim within the context of a guilty plea, a petitioner must show that his counsel's constitutionally ineffective performance affected the outcome of the plea process such that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

"A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the

-20-

advice he received from counsel  was not within [acceptable] standards." '*United States v. Coffin*, 76 F.3d 494, 497 (2d Cir.1996) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (alteration in original)). Here, the record establishes that Hill readily admitted his culpability, along with co-defendant Person, for the death of the victim in this case. The trial court made certain to obtain confirmation that Hill had consulted with his attorney before pleading guilty and was fully satisfied with counsel's performance. These facts demonstrate the knowing and voluntary character of his guilty plea and the lack of substance to his attacks on trial counsel.

Moreover, Hill's voluntary guilty plea precludes any constitutional claims resulting from conduct occurring before his guilty plea. Thus, the aforementioned ineffective assistance of counsel claims that relate to pre-plea events, such as the failure to investigate potential witnesses, acquisition of discovery material, and his decisions regarding a psychiatric examination, are effectively waived  under *Tollett v. Henderson* because Hill's plea was voluntary.

Particularly lacking on the present record is any indication of prejudice to Hill as a result of counsel's representation. In the context of a guilty plea, a defendant shows prejudice by proving that but for counsel's alleged errors, he would have insisted on proceeding to trial. This Hill is unable to do. I note that trial counsel secured a very favorable plea deal for him. Had Hill been convicted of second degree murder as charged in the indictment, he faced a sentence of 25 years to life. Instead, Hill was able to plead guilty to first degree manslaughter, a class B felony, and thereby avoided the potential for a life sentence. Hill cannot make a convincing argument that he would have by-passed such a favorable outcome in order to roll the dice at a trial.

With regard to counsel's alleged derelictions during the sentencing phase, it is this

Court's opinion that the fact that Hill received the maximum period of incarceration possible had nothing whatsoever to do with his trial counsel's efforts on his behalf. Based on Hill's failure to contradict trial counsel's comment that a pre-sentencing report would reference Hill's other criminal activity and negatively affect any chance at leniency, the Court concludes that trial counsel was quite reasonable in choosing to forego such a report, even though this strategy ultimately did not succeed. In sum, Hill's claim that he was deprived of the Sixth Amendment right to the effective assistance of counsel is without merit and should be dismissed.

I note that throughout Hill's other pleadings submitted in support of the instant habeas petition, he also levels general criticisms against appellate counsel. As was the case with his claims against trial counsel, these allegations are without substance. Hill states, "appellate counsel, raising [sic] frivolous claims compared to the most important and serious grounds: Coercion, fraud, misrepresentation, withholding of exonerating evidence, ineffective assistance of trial counsel, incompetent to stand trial and other serious grounds . . . ." Petitioner's Memorandum of Law ("Pet'r Mem.") at 12 (Docket No. 4). With the exception of the claim of incompetence, the Court has already discussed the lack of merit of all of these claims that Hill faults appellate counsel for not addressing. He thus has failed to demonstrate that counsel was unreasonable in declining to pursue claim that were not meritorious, barred by Hill's guilty plea, or both. Furthermore, he was not prejudiced since there is no reasonable likelihood that the outcome of his appeal would have been different.

As to Hill's belated assertion that he was mentally incompetent, and that appellate counsel should have asserted that on appeal, I note In *Godinez v. Moran*, the Supreme Court articulated the standard for gauging a defendant's competence to plead guilty: he must have the

"sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." 509 U.S. 389, 396 (1993) (adopting the same competency standard used to judge a defendant's ability to stand trial, as set forth in *Dusky v. United States*, 362 U.S. 402 (1960)). Any claim that he was not capable of understanding the proceedings is undermined by Hill's own sworn statements and the manner in which conducted himself at the plea colloquy.

Furthermore, the psychiatric evaluation conducted when he was ten-years-old that Hill has submitted does not support his claim of mental incompetence. The report contained findings that he already was "an impulsive aggressive child, severely delayed developmentally" and that his "[g]eneral intellectual functioning [was] well belwo [sic] CA [chronological age]." However, his "[t]hinking was concrete" and his affect "[w]as appropriate for CA." In any event, a defendant's low IQ is not, in and of itself, a basis on which to find that he is incompetent to stand trial or to waive his constitutional rights. *See*, *e.g.*, *Atkins v. Virginia*, 536 U.S. 304, 305 (2002) ("Mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial. . . . Their deficiencies do not warrant an exemption from criminal sanctions . . . ."); *see also Smith v. Francis*, 474 U.S. 925 (1985) (denying *certiorari* in a case where defendant, a mentally retarded, with an IQ of 65 and mental abilities roughly equivalent to those of a ten-year-old child, had been tried and convicted of murder).

Most important, Hill has failed to come forward with credible evidence that would justify overlooking his statements under oath that he was choosing to plead guilty of his own accord. In the context of a plea allocution, a defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *accord*, *e.g.*, *Adames v.*

-23-

*United States*, 171 F.3d 728, 732 (2d Cir.1999). Such statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Id.* (citing *United States v. Gonzalez*, 970 F.2d 1095, 1101 (2d Cir.1992) (no evidentiary hearing necessary where criminal defendant makes allegations that simply contradict his statements made under oath at plea allocution); *United States v. Bambulas*, 571 F.2d 525, 526 (10th Cir.1978) (statements at plea allocution are conclusive absent credible reason "justifying departure from their apparent truth")).

## V.      CONCLUSION

For the reasons set forth above, the Court recommends that the petition for a writ of habeas corpus filed by Michael J. Hill. Furthermore, the Court finds that Hill has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2). Therefore, the Court recommends that no Certificate of Appealability should issue with respect to any of petitioner's claims.

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: July 24, 2008
       Rochester, New York.

-24-

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: Rochester, New York
        July <u>24</u>, 2008.

-25-